## Rachel C. Coulter *v.* Pine Township, Appellant.

*Negligence—Townships—Bridges—Traction engines—Ordinary travel.*

In an action against a township to recover damages for death caused by a traction engine breaking through a township bridge, it is proper to leave to the jury the question whether or not traction engines had become a usual and ordinary mode of travel when the supervisors reconstructed the bridge about five years before the accident. Clulow v. McClelland, 151 Pa. 583, followed.

*Negligence—Damages—Life insurance—Evidence.*

Damages for death caused by negligence are not reduced by the amount of insurance on the life of the deceased.

Argued Oct. 9, 1894. Appeal, No. 160, Oct. T., 1894, by defendant, from judgment of C. P. Mercer Co., Jan. T., 1894, No. 44, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for death of husband. Before MEHARD, P. J.

At the trial it appeared that, on Oct. 5, 1893, Joseph C. Coulter was killed by a traction engine, which he was driving, breaking through a township bridge. The bridge in question had been reconstructed in 1888, by the supervisors of defendant township. Evidence for plaintiff tended to show that traction engines had been in general use in the neighborhood where the accident occurred for about ten years before the accident.

The court charged in part as follows :

" If Mr. Coulter undertook to use the bridge in an extraordi-

nary way and the accident resulted, neither he nor his wife or children after him could recover if an accident resulted through the combination of the defect in the bridge and the extraordinary test or strain or use to which Mr. Coulter put it, even though the bridge was not safe for ordinary travel.

" [But, upon the other hand, if when the bridge was reconstructed in 1888, the use of traction engines had become or-dinary and usual in that neighborhood, then it was incumbent upon the supervisors when they were reconstructing the bridge to reconstruct it with a view to such a use, although it was a comparatively new one. . . .

" From the instructions which we have given to you, you will see that this case turns upon the question whether or not traction engines had become a usual and ordinary mode of travel when the supervisors of the township reconstructed the bridge in June of 1888.    If they had, then we say to you that it was the duty of the supervisors to so construct the bridge at that time as to make it reasonably safe for such modes of travel.    It was the duty of the supervisors thereafter to maintain the bridge so as to be reasonably safe for such modes of travel. . . .

" If you are satisfied that traction engines had become a usual and ordinary mode of travel in Pine township at the time when the bridge was reconstructed in June of 1888, and that the supervisors were negligent in the way the bridge was reconstructed at the time, as to the material used or the mode of construction, or that they were negligent in maintaining or failing to maintain the bridge when they ought to have known that defects would arise, and that a defect in the bridge was the cause of the accident resulting in Joseph C. Coulter's death, then your verdict should be in favor of the plaintiff.] " [9]

Plaintiff's points were as follows:

" 1. It is the duty of the supervisors of Pine township to keep the bridge where the accident to plaintiff's husband occurred in good order and repair, and neglect of this duty would render the township liable for all damages resulting from such neglect to any person using the bridge by any method of travel or transportation that was usual and ordinary in the neighborhood where the bridge was located."    Affirmed. [2]

" 2. If the timbers of the bridge or any of them at the time of the accident stood as long as such timbers usually last, or

longer, it was negligence in the supervisors not to make a careful examination of them, not only a superficial examination but an internal examination by boring or otherwise in order to ascertain whether the bridge was safe. *Answer:* It is true that such failure would be negligence, but it does not necessarily follow that it would be negligence actionable by Joseph C. Coutler, or by his wife and children after him. That would depend upon the question whether Joseph C. Coutler was using the bridge by a mode of transportation which was usual and ordinary in the neighborhood, and whether such mode of transportation had become usual and ordinary at the time when the bridge was constructed." [2]

" 3. The absence of knowledge on the part of the supervisors of the rotten condition of the timbers in the bridge is no excuse against the charge of negligence, if such timbers had been in use as long as such timbers usually last, or longer, and no careful and searching examination was made to ascertain their condition. *Answer:* This request is affirmed. That is, we have already told you that after the bridge was constructed—if it had been properly constructed—after it was constructed, then an intervening defect would have to be brought to the knowledge of the supervisors; but length of time would be equivalent to knowledge of the fact, if the time was long enough, in view of the materials used in the bridge, to have brought it home to them, or such as ought to have brought home to them knowledge that by the action of the forces of nature the bridge was in all probability defective." [3]

" 4. If at the time the bridge was repaired or reconstructed in 1888, travel and transportation by means of traction engines of the same or about the same weight and character as the one used by the plaintiff's husband, was a usual and ordinary method of travel and transportation upon the public roads in the neighborhood, then it was the duty of the supervisors of the township in the repairing and reconstructing of said bridge to make it strong enough to carry vehicles of this kind with safety, and to maintain it in this condition, and if this duty was neglected and the accident to plaintiff's husband was in consequence of this neglect the plaintiff is entitled to recover." Affirmed. [4]

Defendant's points were among others as follows:

" 4. The decedent was bound to take notice of the apparent strength of the bridge, the purpose for which it was built, and the kind of vehicles ordinarily used thereon, and if he took upon said bridge a vehicle of unusual and extraordinary weight he was putting the bridge to an unlawful use, and the plaintiff is not entitled to recover in this action. *Answer :* This request is affirmed. You will bear in mind, that we are not saying as matter of law that the traction engine was an unusual or extraordinary mode of transportation; that question is left to you ; but if you so find that it was an unusual and extraordinary mode of transportation, then this request is affirmed." [5]

" 6. If the jury believe the steam traction engine owned by Joseph C. Coulter was of greater and more unusual weight than the ordinary traffic the bridges in Pine township, including the one in question, were built to sustain in passing over them, and subjected the bridge to much greater strain than said ordinary traffic, then it was the duty of said Coulter to use extraordinary caution and provide proper means, such as laying down planks to resist the greater strain to the bridges in passing over them with his engine, and not having done so in attempting to cross the bridge in question, Oct. 3, 1893, no recovery can be had in this case. *Answer :* We leave it to you as a matter of fact to say whether Mr. Coulter did use proper care in crossing this bridge or attempting to. If he did not, the plaintiff cannot recover." [6, 7]

" 8. Under the law as applied to the evidence in this case the plaintiff is not entitled to recover. *Answer :* This request is refused. We submit it to you, in the light of the evidence and the law as we have laid it down to you whether or not the plaintiff is entitled to recover." [8]

. Verdict and judgment for plaintiff for $7,995.

*Errors assigned* were (1–8) above instructions, quoting them ; (9) portion of charge recited in opinion of Supreme Court; (10) withdrawal of evidence as to life insurance.

*S. R. Mason* and *B. Magoffin,* for appellant.— A township is only bound to construct its highways and bridges for ordinary use, in an ordinary manner, and not for an unusual or extraordinary use, either by crossing at great speed or by passing a very large and unusual weight: McCormick v. Twp., 112 Pa. 185 ; Clulow v. McClelland, 151 Pa. 583.

That traction engines are vehicles of unusual character to transport over the public highways is recognized, both by the decisions of this court and the acts of the legislature : Com. v. Allen, 148 Pa. 358 ; act of June 30, 1885, P. L. 257.

In Sedgwick on Damages, 4th ed., p. 651, note 1, it is said Lord CAMPBELL lately "instructed the jury to deduct from the amount of the pecuniary loss sustained by the family, the insurance they would be entitled to receive on a policy on the life of the deceased against accidents by railway." Considering the grounds on which recovery was based, why should it not have been done in this case.

*Q. A. Gordon, G. W. McBride* and *S. H. Miller* with him, for appellee.—The instruction as to defendant's liability was proper : Clulow v. McClelland, 151 Pa. 585 ; McCormick v. Twp., 112 Pa. 185 ; Shadler v. Blair Co., 136 Pa. 488.

The introduction of traction engines, like that of all other modern improvements, is gradual. They do not become general in any locality all at once, nor in all localities at the same time. It would be unreasonable therefore to say that, at any particular date, they are or are not so generally used throughout the state as to determine the character of the bridges required throughout the state. As a rule defining the conditions which require the maintenance of bridges sufficient to carry traction engines, the opinion in Clulow v. McClelland applies to the whole state, but as designating any territory in which these conditions did not then exist, it applied to but one township.

The jury could not consider, in estimating damages, the amount of insurance on the life of deceased : R. R. v. Kirk, 90 Pa. 15.

OPINION BY MR. JUSTICE MITCHELL, Nov. 5, 1894 :

This case is governed by Clulow v. McClelland, 151 Pa. 583, but it is an error to suppose that that case, or Com. v. Allen, 148 Pa. 358, decided as matter of law that the moving of traction engines for steam threshing and other purposes, over roads or bridges, was at that time an extraordinary or unlawful use of the public highways. On the contrary, the nonsuit in Clulow v. McClelland was sustained expressly on the

ground that "plaintiffs themselves testified that they knew that the machine was a good deal heavier than the ordinary travel in the neighborhood, . . . . that in fact they had examined this bridge, taking off a plank to do so, and considered it safe." In other words they were aware of the risk and voluntarily accepted it, while as to the defendant it was said, "It was not negligence in the township not to know what an inspection by the plaintiffs failed to disclose." The point of that case therefore is that the extraordinary use of the highway was clear from plaintiff's own evidence, and therefore there was no ground on which the township could be held liable for the accident. To make it still more clear that this was the extent of the decision, the Chief Justice added a warning that "when the use of steam engines for threshing, etc., becomes so general that their transportation over the roads amounts to an ordinary use of them, it may be necessary to strengthen the bridges so as to withstand the increased strain." This generality of use would, of course, ordinarily be a question for the jury.

How far, and under what circumstances it may become the duty of townships to strengthen, for this purpose alone, bridges which are otherwise safe and in good repair, we need not discuss until the question is really before us. In the present case it appeared in the evidence that the bridge had been altered and reconstructed in 1888, and the court instructed the jury that if it was properly constructed with reference to ordinary travel at that time, any intervening defect would have to be brought to the knowledge of the supervisors, but that if the timbers had been in use as long as such timbers usually last, or longer, then length of time would be equivalent to knowledge. This was in effect an instruction that if the bridge was properly constructed and maintained with reference to ordinary travel in 1888, the township would not be liable though the moving of steam threshers had in the meantime become an ordinary use of the highway. This was at least as favorable to defendant as it was entitled to ask. On the main issue the jury were told, "this case turns upon the question whether or not traction engines had become a usual and ordinary mode of travel when the supervisors reconstructed the bridge in June 1888." It was a question for the jury and was thus submitted in exact accord with the principles of Clulow v.

McClelland. The difference in result was due to the difference in the facts as appearing there in plaintiff's own evidence, and as found here by the jury.

The assignment of error to the withdrawal of the evidence as to the insurance on the life of Joseph Coulter cannot be sustained. There was no basis on which such evidence could be admitted. Money paid on a policy of insurance is not the pecuniary value of the life, but of the premiums paid. The evidence was entirely irrelevant to the liability of defendant, or its amount: No. Penn. R. R. Co. v. Kirk, 90 Pa. 15. Appellant cites the authority of Lord CAMPBELL from Sedgwick on Damages, but the eighth edition of that work, sec. 67, discusses the subject more fully and concludes thus, " The amount received by the plaintiff on an insurance policy cannot be shown to reduce the damages. . . . When an action is brought under a statute for damages causing death the rule in England is different. . . . In the United States however the ordinary rule is followed, and the amount recovered is not reduced by the amount of insurance money," citing Sherlock v. Alling, 44 Ind. 184, 199; Althorf v. Wolfe, 22 N. Y. 355; Terry v. Jewett, 17 Hun, 395, and Harding v. Townshend, 43 Vt. 536.

Judgment affirmed.