# Whitmire *v.* Township of Muncy Creek.

*Statutes—Rules for construction of statutes.*

Before adopting any proposed construction of a passage in a statute susceptible of more than one meaning, the courts deem it important to consider the effect or consequences which would result from the proposed construction.

Several acts in pari materia, and relating to the same subject, are to be taken together and compared in the construction of them because they are considered as having one object in view and as acting upon one system.

It is a presumption that the legislature does not intend to make any alteration in the law beyond what it explicitly declares either in express terms or by unmistakable implication; in other words beyond the immediate scope and object of the statute. In all general matters beyond, the law remains undisturbed.

*Bridges—Repair of bridges—Counties—Townships—Acts of April 13, 1843, P. L. 221, March 30, 1859, P. L. 309, and March 12, 1860, P. L. 144.*

It was not the intention of the legislature in passing the Act of March 30, 1859, P. L. 309, extended to the county of Lycoming under the Act of March 12, 1860, P. L. 144, to make township supervisors agents of county commissioners to repair bridges which had been built by the county, nor to impose upon the county the duty of keeping in repair such bridges. Townships are liable for such repairs, and the personal liability of supervisors for neglect to perform this duty does not lessen the primary liability of the township to those who suffer injury from the neglect.

*Negligence—Townships—Defective bridge.*

In an action against a township to recover damages for injuries to a threshing machine sustained by the breaking of a floor beam of a bridge, the township will not be heard to allege that the defect was due to the original construction of the bridge by the county, where it appears that the beam had been in place between fifty and sixty years, and the evidence showed that the breaking of the timber was due to natural decay. Nor can the township allege that the decay of the timber was a latent defect. Under the circumstances inspection was a duty, and it was negligence on the part of the township to omit all proper precautions to ascertain the condition of the bridge.

*Negligence—Townships—Defective bridge—Contributory negligence.*

In an action against a township to recover damages for injuries sustained by a steam threshing machine by breaking through a defective bridge, the court cannot say as a matter of law that the plaintiff was guilty of contributory negligence in propelling the machine across the bridge without previous examination of the bridge's condition, where the evidence showed that the machine was of medium weight, and that steam threshers of the same description were in common use in that part of the country, and had been for several years. In such a case the question of contributory negligence is for the jury.

Argued Feb. 14, 1901. Appeal, No. 12, Feb. T., 1901, by plaintiff, from order of C. P. Lycoming Co., June T., 1900, No. 51, refusing to take off nonsuit in case of Bert Whitmire v. Township of Muncy Creek. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Trespass for damages to a threshing machine. Before MITCHELL, P. J.

At the trial it appeared that on March 14, 1899, a steam traction engine used for threshing purposes, and owned by plaintiff fell through the floor of a bridge across Little Muncy Creek. The bridge had been built about the year 1844 by the commissioners of Lycoming county. The accident was caused by the breaking of one of the original floor beams. The evidence tended to show that this beam had become weakened by age and decay.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*N. M. Edwards* and *C. E. Sprout*, with them *G. B. Metzger*, for appellant.—Prior to the passage of the said act of 1843, it

was the duty of the supervisors of the several townships of Lycoming county to keep in repair the county bridges in their respective townships: Erie County v. Com., 127 Pa. 207.

Lycoming county was governed by and subject to the act of 1843, and under its provisions was compelled to keep in repair all of its county bridges.

The contention of the appellant is that the duty and responsibility for the repair of county bridges in Lycoming county was changed by the 6th section of the act of March 30, 1859, from the county commissioners, representing the county of Lycoming, to the supervisors of the townships of said county, representing their respective townships: Rapho v. Moore, 68 Pa. 404; Com. v. Cross Cut R. R. Co., 53 Pa. 62; Rigony v. County of Schuylkill, 103 Pa. 382.

It was contended by appellee below that even if the act of 1859 does place upon the supervisors the duty to repair the bridge in question, that the duty is a personal one, and that the supervisors being named in said act instead of the township, the township cannot be held for their neglect of duty.

Our reply to this position is, that " personal liability of the supervisors for neglect of duty does not relieve the township from responsibility:" Dean v. New Milford Twp., 5 W. & S. 547; Rapho v. Moore, 68 Pa. 404; Township of Newlin v. Davis, 77 Pa. 320.

The powers of supervisors are commensurate with their duties: Maneval v. Jackson Twp., 141 Pa. 435; Township of Newlin v. Davis, 77 Pa. 321.

The supervisor failed properly to inspect the bridge: Rapho v. Moore, 68 Pa. 407; Humphreys v. Armstrong Co., 56 Pa. 207.

*William W. Hart,* with him *Robert K. Reeder,* for appellee.— The township was not bound to keep in repair the county bridge, the breaking of which occasioned the injuries complained of: Westfield Borough v. Tioga County, 150 Pa. 152; Perry Twp. v. John, 79 Pa. 416; Alcorn v. Phila., 44 Pa. 348; Boyd v. Ins. Patrol of Phila., 113 Pa. 269.

The defect in the bridge which occasioned the injuries being the fault of the original construction of the same, there can

be no liability on the part of the appellee: Rigony v. Schuyl-kill Co., 103 Pa. 382.

The defect in the bridge being a latent defect there could be no recovery without proof of notice of such defect: Lohr v. Philipsburg Borough, 165 Pa. 109.

The appellant was guilty of contributory negligence: Me-gargee v. Philadelphia, 153 Pa. 340; McCormick v. Washing-ton Twp., 112 Pa. 185; Clulow v. McClelland, 151 Pa. 585; Hill v. Tionesta Twp., 146 Pa. 11; Brendlinger v. New Hano-ver Twp., 148 Pa. 93; Lynch v. Erie, 151 Pa. 380.

OPINION BY RICE, P. J., July 25, 1901:

1. The bridge in question was built by the county of Lyco-ming about the year 1844, and is located entirely in the township of Muncy Creek, the defendant. The first question to be noticed is, whether the duty of making such ordinary repairs as were necessary to keep it fit for use rested upon the town-ship or the county. Prior to the Act of April 13, 1843, P. L. 221, this duty was imposed by the general law of the common-wealth upon townships. "When a county bridge has been once legally built, such ordinary repairs as are necessary to preserve it fit for use are to be made by the supervisors of the township, as in the case of roads:" Commonwealth v. Monroe County, 2 W. & S. 495. Speaking of the act of 1836 and previ-ous legislation, Mr. Justice WILLIAMS said: "But the law does not make provision for its " (a county bridge) "care after its erection. The duty remains on the township, and the finished bridge, when opened for travel, becomes a part of the highway and passes as such under the care of the township officers. The county has no road officers. Its duty is simply to build the bridge, when the township cannot; and, that duty done, it has no further responsibility for its maintenance than for the maintenance of the roadway leading to or from it:" Erie County v. Commonwealth, 127 Pa. 197. Further on in his opinion Justice WILLIAMS said: "The case of Howe v. Craw-ford County, 47 Pa. 361, on the authority of which the learned judge of the court below ruled this case is in conflict with The Commonwealth v. Monroe County, supra, and with the rule now laid down." See also Francis v. Franklin Twp., 179 Pa. 195.

The general law of the commonwealth relating to the ordinary repairs of bridges as declared in Commonwealth v. Monroe, supra, remained undisturbed by legislation until the passage of the act of 1843, which provided: " That from and after the passage of this act it shall be the duty of the county commissioners of the several counties of this commonwealth to repair all bridges erected by the county and to pay the expenses of such repairs out of the county treasury in the usual manner, except " in certain counties, among which was Washington. By the 2d section of the Act of April 26, 1850, P. L. 615, 616, the provisions of the act of 1843 were extended to the county of Washington, which, as has been seen, was excepted out of the latter act. It thereupon became the duty of the county commissioners of Washington to keep in repair all bridges erected by the county. But by the Act of March 30, 1859, P. L. 309, entitled " An act relating to roads and bridges in Washington county," which was extended to the county of Lycoming by the Act of March 12, 1860, P. L. 144, it was provided in the 6th section as follows: " That it shall be the duty of the supervisors of the several townships, and the street commissioner, or other persons having charge of the highways in incorporated boroughs, to keep in repair all bridges built, or that may hereafter be built, by the county commissioners, at the charge of the county, and they shall be subject to the like penalties for neglect as they are now liable to in the case of roads and bridges built at the expense of the township or borough."

Two constructions of the foregoing section have been pressed upon our consideration. One makes the words " at the charge of the county " qualify the words " keep in repair," thus making the township supervisors agents of the county. The other makes them qualify the word " built," thus leaving the law, as to the duty of the townships to make ordinary repairs of bridges built by the county, as it stood prior to the act of 1843. Before adopting any proposed construction of a passage susceptible of more than one meaning it is important to consider the effects or consequences which would result from it for they often point out the general meaning of the words. This is elementary law. Another familiar principle to be kept in view is that several acts in pari materia, and relating to the same sub-

ject are to be taken together and compared, in the construction of them, because they are considered as having one object in view and as acting upon one system: 1 Kent's Comm. 463. Growing out of these rules is the presumption that the legislature does not intend to make any alteration in the law beyond what it explicitly declares either in express terms or by unmistakable implication; in other words, beyond the immediate scope and object of the statute. In all general matters beyond, the law remains undisturbed: Endlich on Interpretation of Statutes, sec. 113. These general principles are applicable here. The 4th section of the Act of April 15, 1834, P. L. 538, declares: "The corporate powers of the several counties and townships shall be exercised by the commissioners or supervisors thereof, respectively." In view of this general policy of the state it may well be questioned, whether, in the enactment of the local law under consideration, the legislature intended to set it aside by conferring the powers and imposing the duty to repair bridges upon the county—thus making it a county affair—but at the same time making the township supervisors the agents of the county for the exercise of this power and the performance of the duty in their respective townships. If the language of the section left the meaning of the legislature in doubt we would be inclined to the opinion that this consideration, alone, would resolve the doubt against such interpretation. But does not the succeeding section remove all doubt as to the intention of the legislature? It reads as follows: "It shall be the duty of the county commissioners, upon representation being made to them that any bridge built by the county has been damaged or destroyed by flood or other casualty, or by natural decay become unsafe, so as to be too heavy an expense for the township to repair or rebuild, to make an examination of the same; and if they are then satisfied such is the case, to proceed to repair or rebuild the same, as to them shall appear best, as in the case of new bridges." This express grant of power to county commissioners to repair bridges under special circumstances is entirely inconsistent with the assumption that the duty of making all repairs rests upon the county. Construing the two sections together we think the true conclusion may be stated as follows: The statute prescribes the prerequisites to the exercise of this power by the county com-

missioners and without them no duty devolves upon the county: Rigony v. Schuylkill Co., 103 Pa. 382. Where these prerequisites exist, that is, where representation has been made to them that a bridge needs repairs, the expense of which would be too heavy for the township to bear, and after due investigation they are satisfied, and so determine, that such is the case, the power becomes a duty. This implies an investigation by them of each case as it arises, not the adoption of a general policy relative to the repair of all bridges built by the county. Where these prerequisites do not exist, such repairs as were required in the present instance are to be made by the supervisors, as township officers, and for the performance of this duty they have the same powers as in the case of the highway, of which the bridge forms a part. It is hardly necessary to say, that the personal liability of the supervisors for their neglect to perform this duty does not lessen the primary liability of the township to those who suffer injury from their neglect. Upon that point we need only refer to the case of Rapho v. Moore, 68 Pa. 404. It follows that there was error in holding that " there was no duty devolving upon the township defendant to keep said bridge in repair, and therefore the defendant is not liable in this action."

2. It is urged, in the second place, that the cause of the accident was a defect in the original construction of the bridge, and therefore the township was not liable. In support of this legal proposition counsel cite Rigony v. Schuykill Co., supra. The accident was caused by the breaking of a floor beam upon which the ties or joists, upon which the planks were laid, rested. This floor beam had been in place between fifty and sixty years, and according to the testimony of several supervisors had not been examined to their knowledge. One of them said: " I did not; I took it for granted it was all right." This seems to have been true of the other officers. The evidence tended to show that the breaking of the timber was due to natural decay. This may have been hastened by reason of the mortising of the timber, but as the bridge as thus constructed had stood for over fifty years the court would not have been warranted in declaring that the mortising of the timber was the proximate cause of the accident. The township's officers were bound to know, and presumably did know, the manner in which the

bridge was constructed, and to grade their care according to the circumstances. If with such knowledge they omitted inspection or replacement of the timber when they ought to have known that in the ordinary course of nature it was weakened by decay, a jury would have been warranted in finding that the proximate cause of the accident was their neglect to repair.

3. Another point urged by the defendant is, that the decay of the timber was a latent defect, and there could be no recovery without proof of express notice. The rule as to the responsibility for latent defects does not apply if inspection was a duty, and upon proper inspection the defect would have been discovered. When a bridge has stood for the time timbers are expected to last, and it may be reasonably expected that decay has set in, it is negligence to omit all proper precautions to ascertain its condition. In such case appearances will not excuse the neglect, but it is their duty to call to their assistance those whose skill will enable them to ascertain the state of the structure, or, at least, to apply such ordinary tests as will give them the required information : Rapho v. Moore, supra ; Ford v. Roulet Township, 9 Pa. Superior Ct. 643. It is unnecessary to cite other cases. It would have been flagrant error for the court to declare as matter of law that the supervisors had done their whole duty.

4. The last point suggested by the defendant is that the plaintiff was guilty of contributory negligence in propelling a traction engine and steam thresher across the bridge without previous examination of its condition. But according to the testimony, steam threshers of the same description were in common use in that part of the country and had been for several years. His was of medium weight. The court could not have declared as a matter of law that the moving of traction engines for steam threshing and other purposes was at that time and in that neighborhood an extraordinary or unlawful use of the highway : Coulter v. Pine Twp., 164 Pa. 543. Whether he used due care and whether, in view of this common use of the highways and bridges, the supervisors were negligent in not replacing the decayed timbers, were questions which the plaintiff was entitled to have submitted to the jury with appropriate instructions.

Judgment reversed and venire facias de novo awarded.