## Forish v. Paul

*Bruce Bernard,* for plaintiff.
*John Gent,* for defendant Eckerd Drugs Stores.
*Irving Murphy,* for defendant David B. Paul, M.D.

LEVIN, *J.,* February 9, 1989 — Presently before the court is a motion for summary judgment brought by defendant Eckerd Drugs Stores.

The essential facts are undisputed. During 1980, plaintiff Robert Forish was a patient of David B. Paul, M.D. a psychiatrist. Part of plaintiff's treatment involved the use of prescription drugs including Norapramin, Librium, Dalmane, Trilafon and Mellaril. During the relevant time period plaintiff's prescriptions were filled by defendant Eckerd Drug Stores. While under the care of Dr. Paul, plaintiff fell ill, suffering respiratory and cardiac arrest. After

being admitted to a hospital, plaintiff died from shock due to acute sepsis infection.

Plaintiff's wife filed a wrongful death and survival action alleging that plaintiff's psychiatrist was negligent in his treatment of decedent. Also included was a count against the pharmacy which had filled plaintiff's prescriptions, Eckerd Drugs. Plaintiff's allegations of negligence against defendant Eckerd Drugs consist of (a) failure to maintain a record of patient drug history; (b) failure to warn decedent of incompatibilities of the medications taken; (c) failure to consult with the decedent's physician about the ongoing chemotherapy of decedent.

Defendant Eckerd Drugs has filed this motion for summary judgment based on two theories. First, defendant argues that as a matter of law Eckerd Drugs did not breach a duty of care owed to decedent. Alternatively, defendant argues that plaintiff has failed to show any causal connection between Eckerd's alleged negligence and decedent's death.

The court is now called upon to examine the parameters of a pharmacy's duty in dealing with its customers. Specifically, the issue turns on the extent to which a pharmacist owes a duty in dispensing medications and in monitoring the patient's use thereof. Defendant's alternative argument involves a situation where a physician and a pharmacy owe the same or a similar duty. When the physician fulfills that duty, is the causal tie broken between the alleged negligent conduct of the pharmacist and the patient's death, negating the pharmacist's liability?

The standard required in ruling on a summary judgment motion is well settled. Summary judgment is properly granted in those cases where the evidence of record, taken as a whole, does not

present a genuine issue as to any material fact. Pa.R.C.P. 1035(b). Where the court so concludes, after examing the entire record in light most favorable to the non-moving party and accepting as true all well-pled facts, then the movant is entitled to judgment as matter of law. *Thorsen v. Iron and Glass Bank,* 328 Pa. Super. 135, 476 A.2d 928 (1984).

Before any negligence cause of action can proceed to trial, it must be determined that the defendant owed a duty of care to the plaintiff. When injury is suffered by one not within the scope of a duty, such person has no right to recover because there has been no breach of duty with regard to him. This question is one of law, for the trial court in the first instance. *Merritt v. City of Chester,* 344 Pa. Super. 505, 496 A.2d 1220 (1985).

The parties do not dispute that a pharmacist owes no duty to its patient under either strict product liability as per the Restatement (Second) of Torts §402A, or under the Uniform Commercial Code for breach of implied warranty. Those issues were discussed at length by the Superior Court in *Makripodos v. Merrell-Dow Pharmaceuticals Inc.,* 361 Pa. Super. 589, 523 A. 2d 374 (1987). On the other hand, the appellate courts have recently attempted to clarify the degree of skill required of the pharmaceutical profession under a theory of common-law negligence. In order to better define the scope of a particular professional duty, it is necessary to first examine the regulations and statutory requirements governing same.

"The practice of phramacology is a regulated profession in Pennsylvania. Pharmacists are required to hold a degree in pharmacology from a school accredited by the American Council of Pharmaceutical Education, to complete an internship,

and to pass a comprehensive examination administered by the State Board of Pharmacy, 63 P.S. §390-3. Pharmacies are also licensed in Pennsylvania. 63 P.S. §390-4. The purpose of the Pharmacy Act was to 'regulate the compounding of physicians' prescriptions, preparing drugs, and dispensing them, or other products of an apothecary's calling. . . .' Under 63 P.S. §390-6(h)(1), the State Board of Pharmacy is empowered to regulate the practice of pharmacy." *Riff v. Morgan Pharmacy,* 353 Pa. Super. 21, 28-9, 508 A.2d 1247, 1251 (1986). See generally 63 P.S. §390-1 et seq.

The court in the *Riff* case, *supra,* held that a pharmacy owes a legal duty to its patients to warn of obvious inadequacies appearing on the face of a prescription. A pharmacy is not a merely a warehouse for drugs. Based upon a careful reading of the common-law, statutory, and regulatory guidelines discussed above, it follows that a pharmacy's duties fall into two broad categories. First, liability may flow from a pharmacist's failure to remedy inadequacies *on the face* of a physician's prescriptions. These might include failure to correct improper dosage directions; failure to check on illegible prescriptions; and failure to notice a potentially lethal interaction between drugs on the face of a prescription. Under these circumstances, the courts have determined that a pharmacist has a duty to alert the physician and make proper adjustments. See generally *Riff v. Morgan Pharmacy.* The second category involves negligence on the part of a pharmacist in the actual process of preparing and dispensing a medication pursuant to the orders of the physician. Into this area fall misreading a prescription; mislabeling; improper compounding; incorrect dosage (in strength or quantity); use of improper methods for dispensing; failure to ensure that a the drug is

pure and unadulterated in form upon sale: and failure to attach the proper contraindication warnings as per the doctor's instructions. These particular responsibilities involve that which a pharmacist is specifically trained to practice. As such, they must be carried out with the degree of skill and care expected of the pharmaceutical profession as a whole. See generally *Makripodos v. Merrell-Dow Pharmaceuticals Inc., supra.*

Conversely, there exists no authority in Pennsylvania which would place on the pharmaceutical profession the following duties: to be familar with the patient's medical history and/or medical records; to warn of *all* possible contraindications; to advise and consult with the patient's treating physician (barring an inadequacy apparent on the face of the prescription); or to monitor the patient's use of the presrciptions via patient profiles or records. In fact, imposition of such duties would force the pharmacist to interfere in the patient-physician relationship which our courts hold in high regard.

While it is interesting to note that some states do impose a duty to maintain patient profiles upon the pharmaceutical profession, such a duty has no foundation in Pennsylvania law. To hold a pharmacist accountable for monitoring use makes little practical sense — a patient could have prescriptions filled at a number of different pharmacies, rendering any attempt at comprehensive record-keeping virtually impossible absent some type of state-wide regulatory scheme. Our legislature has not seen fit to require pharmacies to monitor patient use of medications. Pursuant to the rules of statutory construction, courts are precluded from imposing duties in addition to those which the legislative branch has chosen to set forth.

In summary, defendant Eckerd owed to plaintiff

no duty to maintain patient records or profiles. Defendant could be held to a standard of care with regard to failure to warn of medication incompatibilities on the face of the prescription. However, an examination of all evidence of record, including pleadings, answers to interrrogatories, admissions, depositions, affidavits and expert reports, reveal no breach by Eckerd, inasmuch as Eckerd never received facially incompatible prescriptions at any one given time. This limited duty to warn does not place on Eckerd any responsibility for recommending that plaintiff undergo blood work: preventive monitoring issues are within the particular realm of the patient-physician relationship only. Eckerd owed no duty to advise or consult with plaintiff's prescribing physician. Nor is Eckerd liable for failure to question plaintiff's physician about the ongoing chemotherapy program. The evidence before this court shows that the pharmacy labeled the prescriptions with all contraindication warnings given by the physician, such as drowsiness and alcohol alerts. Plaintiff's wife testified that Eckerd referred plaintiff back to his doctor when the decedent inquired about glaucoma and other potential ill effects of the medication. This is all that Eckerd *could* do. It must be remembered that a pharmacist is not licensed to practice medicine.

Hence, plaintiff's allegations against defendant Eckerd Drug Stores have no basis in either fact or law, requiring a summary judgment ruling in defendant Eckerd's favor.

Although the issue is rendered moot in view of the above holding, this court feels it is necessary to address defendant Eckerd's alternative argument for summary judgment. To do so, it must be assumed, arguendo, that Eckerd owed to plaintiff a duty to warn and that the duty was breached.

Eckerd argues that defendant Dr. Paul gave decedent repeated warnings as to the medications he was taking. Had the same warning been given by Eckerd, the plaintiff would nonetheless have suffered the same loss. Consequently, defendant contends that any casual tie between Eckerd's actions and plaintiff's death would be severed. This argument is not persuasive.

The issue of causation is generally one of fact, within the province of a jury. A jury could conceiveably find causation in the instant case. An illustrative example is the duty of professional responsibility and counsel an attorney owes to a client. The fact that a client's first attorney carries out the duties required of the profession would not relieve a subsequently-hired attorney from performing under the same standards. The fulfillment of a duty by one professional does not free from liability another professional who owes the same duty. As such, defendant in the case at bar would not be entitled to summary judgment based on the assumptions outlined above.

Given that there was no breach of duty on the part of Eckerd Drugs, this court enters summary judgment in favor of the defendant Eckerd Drug Stores, as against both the plaintiff and the defendant David M. Paul, M.D.

## ORDER

And now, February 9, 1989, it is hereby ordered, adjudged and decreed that the motion for summary judgment of defedant Eckerd Drug Stores is granted as against both plaintiff and the additional defendant David B. Paul, M.D. This court fully incorporates by reference the opinion attached hereto.